IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREMAYNE COLLIER,<br><br>    Plaintiff,<br><br>  v.<br><br>SHERIFF M. HENNESSEY, et al.,<br><br>    Defendants.<br>_____/ | No. C 06-01143 CW (PR)<br><br>ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S OPPOSITION; DENYING THEIR MOTION FOR SUMMARY JUDGMENT; AND REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM |

INTRODUCTION

On February 16, 2006, Plaintiff Tremayne Collier, a state prisoner currently incarcerated at Kern Valley State Prison, filed this civil rights action under 42 U.S.C. § 1983, arising from incidents occurring while he was a pretrial detainee at San Francisco County jail, against Defendants Sheriff Michael Hennessey, Captain Ideta, Deputy H. Castro, Deputy E. Staehly, Deputy S. Neu, Senior Deputy Jackson and Senior Deputy J. Aragon.

On September 23, 2008, the Court found that Plaintiff stated a cognizable claim against Defendants Castro, Staehly, Neu, Jackson and Aragon for excessive use of force in violation of Plaintiff's due process rights.[1]

On February 20, 2009, Defendant Castro filed a motion for

---

[1] Plaintiff's supervisory liability claims against Defendants Hennessey and Ideta were dismissed with leave to amend. The Court gave Plaintiff until October 23, 2008 to file his amended supervisory liability claims in an amendment to the complaint. He was told that the failure to do so would result in dismissal of his supervisory liability claims without prejudice. On September 4, 2009, due to Plaintiff's failure to amend, the Court dismissed Plaintiff's supervisory liability claims against Defendants Hennessey and Ideta without prejudice.

summary judgment, which the Court denied without prejudice to refiling as a joint motion with the remaining Defendants.

On November 3, 2009, Defendants Castro, Staehly, Neu, Jackson and Aragon filed a joint motion for summary judgment. Plaintiff filed an opposition, and Defendants filed a reply. Thereafter, Defendants took Plaintiff's deposition, and then Defendants filed a motion for leave to file a supplement to their motion for summary judgment. The Court granted Defendants' motion. Plaintiff filed an opposition to Defendants' supplement, and Defendants filed a reply and a motion to strike Plaintiff's opposition to the supplement.

Having considered the papers filed by the parties, the Court DENIES Defendants' motion to strike Plaintiff's opposition to the supplement, and DENIES their motion for summary judgment in its entirety.

## BACKGROUND

The following facts are taken from Plaintiff's declaration in support of his opposition to the motion for summary judgment.

On February 28, 2004, Plaintiff returned to his cell and was informed that there had been a physical altercation between two inmates while he was gone. Jail officials began to interview the inmates. When it was time for Plaintiff's interview, Defendant Jackson informed Plaintiff that he was being transferred to administrative segregation at D-Block. Plaintiff was not given a reason for the transfer, but was told he had to go to D-Block immediately. Defendant Jackson handcuffed Plaintiff, and Plaintiff cooperated while his hands were cuffed in the front. Plaintiff then asked Defendant Jackson to search Plaintiff's paperwork in

2

front of Plaintiff so that he could take it with him to D-Block. Defendant Jackson "became upset" and ordered Defendants Neu, Castro and Staehly to take Plaintiff to D-Block and house him in Cell D-16, stating that "he didn't give a fuck" if they had to drag Plaintiff there. (Pl.'s Decl. at 2.)

Plaintiff's declaration states that he complied with Defendants' orders and that he did not pose a threat to any of them. (Id.) Plaintiff states that his feet were kicked out from under him and that he fell while Defendants Neu and Castro were still holding on to his arms. (Pl.'s Dep. at 145:23-24.) According to Plaintiff, once he was tripped, he fell face down, bracing his fall with his elbows. (Id. at 146:5-9.) Plaintiff asserts, "When I hit the ground, Neu went down with me and I know Staehely went down with me because Staehely was directly behind me." (Id. at 147:16-18.)[2] While on the ground, Plaintiff "felt several officers fall on his back." (Pl.'s Decl. at 2.) Plaintiff asserts, "Staehely jumped on my back and there were others that followed, you can feel when people are jumping on your back. Who exactly, I can't tell you exactly." (Pl.'s Dep. at 147:19-22.) Plaintiff alleges that Defendants Castro, Neu and Jackson were present but failed to intervene when "several officers" fell on his back and prevented him from breathing. (Pl.'s Decl. at 2.)

Defendant Neu then "applied a 2 finger choke hold to [Plaintiff's] adams apple." (Pl.'s Decl. At 2.) According to Plaintiff, the choke hold "cut off all my breathing. As I used my hands that were handcuffed in front of me to come up underneath me

---

[2] Staehly is misspelled in the transcript of Plaintiff's December 23, 2009 deposition.

3

and grab Neu's hands . . . and pulled it away." (Pl.'s Dep. at 148:23-149:40.) Plaintiff then lowered his head to the ground to "prevent any other attacks." (Pl.'s Decl. at 2.) Defendant Jackson placed his foot on the left side of Plaintiff's face and Defendant Castro placed his foot on the left side of Plaintiff's wrist inside the handcuff, "causing the cuff to cut into [Plaintiff's] wrist." (Id.) For purposes of this motion, Defendants do not claim that Plaintiff resisted in any way during the incident.

Plaintiff asserts that sometime during the incident Defendant Aragon and Deputy Kilgariff arrived. (Pl.'s Dep. at 150:12-13.) Plaintiff then observed Defendant Aragon asking Defendant Jackson questions. Plaintiff also states he saw a video camera being held and operated by Deputy Kilgariff and then given to Defendant Staehly.[3] (Pl.'s Decl. at 3.)

Plaintiff claims that he began complaining of breathing problems. Defendant Jackson advised the deputies to "get off" of Plaintiff's back. (Id.) Plaintiff continued complaining that he had trouble breathing. After several minutes, Plaintiff was moved to the safety cell. His clothes were cut off his body. He continued to complain that he could not breathe and that he needed more oxygen. A nurse arrived to administer the oxygen and Plaintiff informed her that he also had chest pains. Plaintiff was then given a nitroglycerin tablet. Paramedics arrived and transported Plaintiff to San Francisco General Hospital for

---

[3] Defendants have submitted a video tape of the incident. However, the video begins after the incident involving Defendants' use of force had already ended.

4

treatment.  After Plaintiff was medically cleared, he was returned to the jail.  A few days later, Senior Deputy Robinson conducted a video interview of Plaintiff.[4]

Plaintiff states that he continues to have "ongoing chest pain, complication of breathing, and has to carry nitroglycerin where ever he goes."  (Pl.'s Compl. at 5.)  On September 9, 2004, Plaintiff was examined by medical officials at San Francisco County Jail because of continued pain in his wrist and elbow.  (Ex. A to Pl.'s Opp'n.)

On February 16, 2006, Plaintiff filed the present action.

DISCUSSION

I.   Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg,

---

[4] Defendants have submitted the video tape and audio tape of Plaintiff's interview by Senior Deputy Robinson.  The Court does not rely on Plaintiff's interview because: (a) the bulk of the interview centers on whether Plaintiff resisted or not, which is not at issue in this case, and (b) the rest of the interview contains information that is duplicative of the parties' other filings.

5

815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Nissan, 210 F.3d at 1106; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-

6

moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan</u>, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. <u>Nissan</u>, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. <u>Id.</u>

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. <u>Id.</u> This is true even though the non-moving party bears the ultimate burden of persuasion at trial. <u>Id.</u> at 1107.

II. Discussion

Plaintiff sues under 42 U.S.C. § 1983, claiming that Defendants used excessive force with intent to cause harm. (Pl.'s Compl. at 6.) Plaintiff alleges Defendants' actions violated his rights under the Eighth Amendment to be free from cruel and unusual punishment. However, pretrial detainees are protected by the Fourteenth Amendment from the use of excessive force that amounts to punishment. <u>Graham v. Connor</u>, 490 U.S. 386, 395 n. 10 (1989). Defendants assert that Plaintiff has failed to come forward with admissible evidence that he suffered any physical injuries as a result of Defendants' actions, and that an allegation of physical injury is required. Defendants also argue that Plaintiff has no evidence that their actions were malicious.

A pretrial detainee, who has not yet been convicted of the

7

crime for which he has been charged, is entitled to at least the protections afforded convicted prisoners. <u>Bell v. Wolfish</u>, 441 U.S. 520, 545 (1979). When prison officials stand accused of using excessive force, the core judicial inquiry is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992). This inquiry requires courts to balance several factors focusing on the reasonableness of the officers' actions given the circumstances. <u>White v. Roper</u>, 901 F.2d 1501, 1507 (9th Cir. 1990). These factors are (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. <u>Id.</u>

Further, law enforcement officers may be held liable if they have an opportunity to intercede but fail to do so when their fellow officers violate the constitutional rights of a plaintiff. <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1289-90 (9th Cir. 2000); <u>Motley v. Parks</u>, 383 F.3d 1058, 1071 (9th Cir. 2004). The passive defendant violates a constitutional right that is "analytically the same as the right violated by the person who strikes the blows." <u>United States v. Koon</u>, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), <u>rev'd on other grounds</u>, 514 U.S. 81 (1996). On the other hand, if an officer is not present during a constitutional violation, or if a violation happens so quickly that an officer had no "realistic opportunity" to intercede, then the officer is not liable for failing to intercede. <u>Cunningham</u>, 229 F.3d at 1290.

Based on Plaintiff's evidence, a finder of fact could

8

reasonably conclude that the actions of Defendants Castro, Staehly, Neu and Jackson above constituted excessive force.  Defendants' argument that Plaintiff must show more severe physical injury is not well taken.  The Supreme Court has recently clarified that injury and force are only imperfectly correlated, and it is the latter that ultimately counts.  <u>Wilkins v. Gaddy</u>, __ U.S. __, 130 S. Ct. 1175, 1178-79 (2010).  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.  <u>Id.</u>  In sum, an excessive force claim may be dismissed because the force used was de minimis, but not because the injuries suffered were de minimis.  To conclude that the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive force claim improperly bypasses <u>Hudson</u>'s core inquiry of whether force was applied maliciously and sadistically to cause harm.  <u>Wilkins</u>, 130 S. Ct. at 1178.  Therefore, contrary to Defendants' argument, Plaintiff does not have to prove the he suffered from physical injury to prevail on his excessive force claim.

    Defendants' attempt to analogize the present facts to those in <u>White</u> is unavailing.  (Defs.' Mot. for Summ. J. at 5 (citing <u>White</u>, 901 F.2d at 1507).)  Defendants state, "Under Ninth Circuit precedent, purported force resulting in the absence of any physical injury whatsoever fails to rise to the level of a 'malicious and sadistic' use of force by defendants."  (<u>Id.</u>)  In <u>White</u>, the Ninth Circuit based its affirmance of the district court's grant of summary judgment on the reasoning that, although the amount and type of force used was disputed between the parties, the plaintiff

9

did not show he requested medical treatment, lost consciousness at any time or suffered any permanent injury. Id. Here, Defendants argue that Plaintiff "has not shown that he required or even that he requested medical treatment for the cuts he allegedly suffered on his wrists and thumb areas." (Defs.' Mot. for Summ. J. at 5.) Contrary to Defendants' argument, Plaintiff's own assertions -- regarding Defendants' use of force and his resulting injuries -- are admissible evidence. Plaintiff asserts under penalty of perjury that he received medical treatment for his injuries and that he suffered permanent harm, including "ongoing chest pain, complication of breathing, and has to carry nitroglycerin wherever he goes." (Pl.'s Compl. at 5.) Therefore, Plaintiff has provided evidence of enough physical harm to overcome summary judgment.

As noted above, Defendants also argue that Plaintiff has not shown that the force was used with the requisite malice and sadism. In determining whether force was applied "maliciously and sadistically for the very purpose of causing harm," the Court may look to many factors, including the need for the application of force and any efforts made to temper the severity of a forceful response. White, 901 F.2d at 1507; Hudson, 503 U.S. at 7. There is no evidence in the present case that Defendants applied force to Plaintiff in a good faith effort to maintain or restore discipline. Hudson, 503 U.S. at 6. As mentioned above, at least for the purposes of this motion, Defendants do not allege that Plaintiff resisted during the incident. Rather, Defendants again argue that because Plaintiff came forward with "no evidence that he suffered any physical injuries," he could not prove that force was applied maliciously and sadistically. This argument is without

10

merit. Plaintiff has created genuine issues of fact as to whether Defendants Castro, Staehly, Neu and Jackson applied excessive force against him. From this, a fact-finder could infer that they acted wantonly, maliciously and for the express purpose of causing harm. Direct evidence of malice and sadism is not required. Therefore, these Defendants are not entitled to summary judgment on the excessive force claim as a matter of law.

There is a dispute over Defendant Aragon's involvement in the incident. Defendants argue that Defendant Aragon did not make physical contact with Plaintiff and therefore could not have caused Plaintiff physical injury. (Defs.' Supplement at 3.) Defendants assert that at Plaintiff's December 23, 2010 deposition, he admitted that Defendant Aragon never caused him any injury. They point out that when Plaintiff was asked about Defendant Aragon's involvement and whether he caused him any physical injury, Plaintiff said, "no." (Pl.'s Dep. at 109:18-21.) However, at other points in the deposition, Plaintiff stated that he was not sure of Defendant Aragon's involvement, and that he was not sure of the identity of the officers who jumped on his back as he was face down. (Id. at 106:13-14, 145:15-22.) Based on this evidence, a finder of fact could reasonably conclude that Defendant Aragon used excessive force.

Alternatively, Plaintiff could prevail against Defendant Aragon by showing that he was present and failed to intervene while Plaintiff's constitutional rights were being violated by Defendants Castro, Staehly, Neu and Jackson. See Cunningham, 229 F.3d at 1289-90. Plaintiff's testimony at his deposition does not suggest that the timing of events was so rapid and fluid as to preclude

11

Defendant Aragon from interceding.  <u>See</u> <u>Koon</u>, 34 F.3d at 1447 n.25 (finding liability for failure to intervene where one officer witnesses another striking blows).  Plaintiff has created a genuine issue of fact as to whether Defendant Aragon had an opportunity to intervene to prevent the excessive force against Plaintiff by the other Defendants.  Therefore, Defendant Aragon is not entitled to summary judgment on the excessive force claim as a matter of law.

Accordingly, Defendants' motion for summary judgment is DENIED.

## CONCLUSION

For the foregoing reasons,

1.   Defendants' motion for summary judgment (docket no. 60) is DENIED.

2.   Defendants' motion to strike Plaintiff's opposition to the supplement (docket no. 80) is DENIED.

3.   The Northern District of California has established a Pro Se Prisoner Settlement Program.  Certain prisoner civil rights cases may be referred to a magistrate judge for a settlement conference.  The Court finds that a referral is in order now that Plaintiff's excessive force claim has survived summary judgment.  Thus, this case is REFERRED to Magistrate Judge Vadas for a settlement conference.

The conference shall take place within one-hundred-twenty (120) days of the date of this Order, or as soon thereafter as is convenient to the magistrate judge's calendar.  Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten (10) days after the conclusion of the conference, file with the

12

Court a report regarding the conference.

The Clerk shall provide a copy of this Order, and copies of documents from the court file that are not accessible electronically, to Magistrate Judge Vadas.

4.  The Clerk shall send a copy of this Order to Plaintiff.

5.  The Clerk shall prepare an Order for Pretrial Preparation, setting the case for a pretrial conference and a five-day jury trial.

6.  This Order terminates Docket nos. 60 and 80.

IT IS SO ORDERED.

Dated: 5/13/2010

CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

TREMAYNE COLLIER,

        Plaintiff,

v.

M HENNESSY, SHERIFF et al,

        Defendant.

Case Number: CV06-01143 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 13, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Tremayne Collier V-60930
Kern Valley State Prison
P.O. Box 5102
A6-208
Delano, CA 93216

Dated: May 13, 2010

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk